**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KATHERINE ARCHUT, | CIVIL ACTION NO. 10-1681 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| ROSS UNIVERSITY SCHOOL OF VETERINARY MEDICINE, et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Katherine Archut ("Archut"), brought this action against Defendants, Ross University School of Veterinary Medicine ("Ross") and DeVry, Inc. ("DeVry") (collectively, the "defendants"), alleging common law breach of contract. (See dkt. entry no. 1, Compl. at ¶¶ 68-74.) Archut also claimed violations of federal and state anti-discrimination laws, on which the defendants have been granted summary judgment in their favor. (See dkt. entry no. 41, 11-19-12 Mem. Op.; dkt. entry no. 42, 11-19-12 Order & J.) The defendants now move, inter alia, to dismiss the remaining breach of contract claim on the basis of forum non conveniens. (See dkt. entry no. 47-1, Defs. Br.)

The Court will resolve the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b). The Court, for the reasons that follow, will grant the Motion insofar as it seeks

dismissal of the remaining claim pursuant to the doctrine of forum non conveniens.

## I. FACTUAL RECORD

The Court has previously described the parties, events giving rise to the claims, and procedural posture of this action in the Court's November 19, 2012 Memorandum Opinion. (See 11-19-12 Mem. Op. at 2-9.) The Court assumes that the parties are familiar with the contents of the Court's November 19, 2012 Memorandum Opinion and will not repeat them here. (See id.)

Archut requests that the Court "reconsider its earlier summary of the facts in light of the entire record, giving due weight to certain evidence that [Archut argues] was entitled to more weight than was given in the Court's earlier discussion." (Dkt. entry no. 53, Archut Br. in Opp'n to Summ. J. ("Archut Opp'n Br.") at 1-2.)[1]

The defendants argue that the Court should reject Archut's request for reconsideration of the Court's earlier, "well-reasoned" factual findings. (Dkt. entry no. 54, Defs. Reply Br. in Further Supp. of Summ. J. ("Defs. Reply Br.") at 2-5.) The defendants oppose Archut's assertion that the Court failed to specifically cite additional facts in the record, or otherwise did not recount

---

[1] While not styled as a motion for reconsideration (as such a motion would be untimely), in essence, Archut asks the Court to reconsider the import of certain factual findings from the November 19, 2012 Memorandum Opinion, as well as re-examine documents to reach a different conclusion in one instance. (See Archut Opp'n Br. at 1-4.)

the facts as Archut believes the record supports, with respect to the timing of when key documentation was provided to Ross.  (See id.)  The Court noted in its November 19, 2012 Memorandum Opinion that

> [c]itations to Defendants' Statement of Undisputed
> Material Facts only include those facts that Plaintiff
> has failed to dispute, unless otherwise noted.  See
> L.Civ.R. 56.1(a) ("any material fact not disputed shall
> be deemed undisputed for purposes of the summary judgment
> motion"); Smith v. Addy, 343 Fed.Appx. 806, 808 (3d Cir.
> 2009).  We thus, after ensuring that the parties'
> respective statements of fact accurately summarize the
> evidence of record, provide citation to their statements.

(11-19-12 Mem. Op. at 2 n.2.)

The Court declines to engage in a reconsideration of the factual findings recounted in the November 19, 2012 Memorandum Opinion.  The Local Civil Rules provide that requests for reconsideration "shall be served and filed within 14 days after the entry of the order or judgment on the original motion by the Judge."  See L.Civ.R. 7.1(i).  Here, Archut would have had to file such a request "within fourteen days after" November 19, 2012. L.Civ.R. 7.1(i).  As Archut did not request reconsideration until May 6, 2013, the Court will not reconsider its prior summary of the factual record from the November 19, 2012 Memorandum Opinion.  (See Archut Opp'n Br. at 37 (noting filing date of May 6, 2013).)

The parties chose to resubmit or incorporate the same statement and counter-statement of facts that the Court addressed

in the November 19, 2012 Memorandum Opinion. (See dkt. entry no. 47-2, Defs. Statement of Undisputed Facts ("Defs. Statement"); dkt. entry no. 47-3, Defs. Supp. Statement of Undisputed Facts ("Defs. Supp. Statement") at 1 ("This Supplemental Local Rule 56.1 Statement expressly incorporates Paragraphs 1-128 of Defendants' original Local Rule 56.1 Statement of Undisputed Facts, as if each and every one is cited herein."); Archut Opp'n Br. at 1 ("[W]e incorporate here the Statement of Facts in our brief in opposition to defendants' earlier summary judgment motion, Docket Entry No. 36, pp. 1-13, as well as the factual material cited in that brief and relied upon at that time.").) As stated supra, the Court incorporates the facts delineated in the November 19, 2012 Memorandum Opinion and adopts such undisputed facts from the record as are necessary to resolve this Motion.

The defendants also submitted a Supplemental Statement of Undisputed Facts, which provides additional background facts directed toward the breach of contract claim. (See Defs. Supp. Statement; see also Defs. Br. at 4 n.1 ("Ross filed a Supplemental Rule 56.1 Statement . . . along with this motion. This motion incorporates Ross' original Rule 56.1 Statement, then adds a few additional paragraphs directed towards the contract claim.").) Archut submitted a Statement in Response to the Defendants' Supplemental Statement of Undisputed Material Facts with her opposition papers that responded to the Defendants' Supplemental

Statement.  (See dkt. entry no. 53-1, Statement in Response to Defs. Supp. Statement of Undisputed Material Facts ("Archut Resp. to Defs. Supp. Statement").)  Accordingly, those supplemental facts, which are supported by evidence of record and are undisputed, will be summarized here.

Ross is accredited by the St. Kitts and Nevis Accreditation Board, which was established by the Government of St. Kitts to set criteria and standards for all aspects of tertiary education in St. Kitts.  (See Defs. Supp. Statement at ¶ 132.)  Ross makes a substantial contribution to the economy of St. Kitts.  (Id. at ¶ 130.)  The legal system in St. Kitts is based on British common law.  (Id. at ¶ 133.)  The final court of appeal is the Judicial Committee of the Privy Council in the United Kingdom.  (Id.)  The Ross Student Handbook expressly "remind[s] [students] that they are also subject to the same local laws as are other citizens and residents of St. Kitts.  The University is not a sanctuary from these laws."  (Id. at ¶ 138.)

## II.  ANALYSIS

### A.  The Timeliness of the Motion Insofar as it Seeks Dismissal

Prior to considering the substance of the Motion, this Court will address Archut's concerns regarding timeliness.  Archut argues that "it is simply too late for defendants to argue forum non conveniens, and their position should be rejected on that basis

alone." (Archut Opp'n Br. at 18.) Archut's timeliness argument is

derived from In re Air Crash, a Fifth Circuit Court of Appeals

case. The Fifth Circuit there stated:

> [A] defendant must assert a motion to dismiss
> for forum non conveniens within a reasonable time after
> the facts or circumstances which serve as the basis for
> the motion have developed and become known or reasonably
> knowable to the defendant. While untimeliness will not
> effect a waiver, it should weigh heavily against the
> granting of the motion because a defendant's
> dilatoriness promotes and allows the very incurrence of
> costs and inconvenience the doctrine is meant to
> relieve.

821 F.2d 1147, 1165 (5th Cir. 1987) (citations omitted), vacated on

other grounds sub nom., Pan Am. World Airways, Inc. v. Lopez, 490

U.S. 1032 (1989).[2] The defendants argue that a district court is

not precluded from reconsidering the forum non conveniens issue on

an expanded record later in the litigation. (See Defs. Br. at 18.)

Lony v. E.I. Du Pont de Nemours & Co., 935 F.2d 604, 608 (3d Cir.

1991) ("Lony II"). They insist that dismissal pursuant to forum

non conveniens "only became appropriate upon an expanded record –

specifically, the summary judgment decision that dismissed the

federal and New Jersey statutory claims." (Defs. Reply Br. at 7.)

The Court finds that the Motion, insofar as it seeks dismissal

pursuant to forum non conveniens, is timely. Archut brought this

action in federal court premised on the Court's federal question

---

[2] The Third Circuit Court of Appeals discussed, but
distinguished, In re Air Crash in Lacey v. Cessna Aircraft Co.,
932 F.2d 170, 177 (3d Cir. 1991) ("Lacey II").

jurisdiction over claims brought under the Rehabilitation Act ("RHA"), 29 U.S.C. § 794, and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, and supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining state law claims. (See Compl. at ¶ 1; 11-19-12 Mem. Op. at 32.) The Court's November 19, 2012 Order and Judgment granted the defendants' Motion for Summary Judgment, in part, and granted judgment in the defendants' favor on Archut's claims brought under the RHA, the ADA, and the New Jersey Law Against Discrimination. (See 11-19-12 Order & J.) The Court, having disposed of all claims over which it had original jurisdiction, instructed the parties to address the jurisdictional issue under 28 U.S.C. § 1332. (See 11-19-12 Mem. Op. at 33.) The Court further asserted that, "[s]hould the parties satisfy the Court that jurisdiction under Section 1332 exists, . . . . the breach of contract claim may yet be subject to dismissal under the doctrine of forum non conveniens." (See id. at 33 n.9.)

The Court finds no dilatory tactics on the part of the defendants and finds that it became appropriate to consider the forum non conveniens issue once the Court granted judgment in the defendants' favor on the federal and New Jersey statutory claims. The Court further finds that the Motion, insofar as it seeks dismissal pursuant to forum non conveniens, was asserted "within a reasonable time after the facts or circumstances which serve as the

basis for the motion have developed," and is thus timely.  See In re Air Crash, 821 F.2d at 1165.[3]

### B.   The Doctrine of Forum Non Conveniens

The doctrine of forum non conveniens permits the Court to dismiss a complaint "when an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience."  See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 (1981).  The Court, when deciding whether to dismiss a complaint based on forum non conveniens, must address four issues: (1) the availability of an adequate alternative forum; (2) the amount of deference to be accorded to the plaintiff's choice of forum; (3) the private interest factors; and (4) the public interest factors.  See Lony v. E.I. Du Pont de Nemours & Co., 866 F.2d 628, 633 (3d Cir. 1989) ("Lony I").

To apply these factors, the Court will employ the analysis set forth in Windt v. Qwest Communications International, Inc.:

> Applying these precepts to a particular case, when
> considering a motion to dismiss on forum non
> conveniens grounds, a district court must first
> determine whether an adequate alternative forum can
> entertain the case.  If such a forum exists, the
> district court must then determine the appropriate
> amount of deference to be given the plaintiff's choice
> of forum.  Once the district court has determined the

---

[3] The Motion was filed on March 11, 2013.  (See dkt. entry no. 47, Defs. Mot. To Dismiss (noting Motion was filed on March 11, 2013).)

8

amount of deference due the plaintiff's choice of forum,
        the district court must balance the relevant public and
        private interest factors.  If the balance of these
        factors indicates that trial in the chosen forum would
        result in oppression or vexation to the defendant out of
        all proportion to the plaintiff's convenience, the
        district court may, in its discretion, dismiss the case
        on forum non conveniens grounds.

529 F.3d 183, 189-90 (3d Cir. 2008).

        "The district court is accorded substantial flexibility in

evaluating a forum non conveniens motion, and each case turns on

its facts."  Id. at 188 (quotation and citation omitted).

"[T]he forum non conveniens determination is committed to the sound

discretion of the trial court."  Id. at 188-89 (quotation and

citation omitted).  The Court, when resolving a motion to dismiss

for forum non conveniens, "must do no more than delineate the

likely contours of the case by ascertaining, among other things,

the nature of the plaintiff's action, the existence of any

potential defenses, and the essential sources of proof."  Lacey II,

932 F.2d at 181.  Where the district court "has considered all

relevant public and private interest factors, and where its

balancing of these factors is reasonable, its decision deserves

substantial deference."  Piper Aircraft Co., 454 U.S. at 257.

        **1.    The Availability of an Adequate Alternative Forum**

        The Court, as a threshold matter, must determine whether an

adequate alternative forum exists.  Kultur Int'l Films Ltd. v.

Covent Garden Pioneer, FSP, Ltd., 860 F.Supp. 1055, 1064 (D.N.J.

1994). Two conditions must be satisfied to meet this adequacy requirement: (1) the defendant must be amenable to process in the alternative forum, and (2) the subject matter of the lawsuit must be cognizable in the alternative forum in order to provide the plaintiff appropriate redress. Id. Inadequacy of the alternative forum is rarely a barrier to dismissal based on forum non conveniens. Tech. Dev. Co. v. Onischenko, 174 Fed.Appx. 117, 120 (3d Cir 2006).

Dismissal is not foreclosed on forum non conveniens grounds merely because the "evidentiary record regarding the availability of an adequate alternative forum is sparse or nonexistent." Miller v. Bos. Scientific Corp., 380 F.Supp.2d 443, 449 (D.N.J. 2005). A party seeking dismissal need not provide record evidence that it is amenable to process in the foreign forum, because a court can always condition dismissal on the movant's consent to jurisdiction. See id. If there is no dispute among the parties regarding the adequacy of the foreign forum, the defendant is under no obligation to provide record evidence that the foreign forum would provide plaintiff with an adequate remedy. See id. at 450. If the parties present a legitimate dispute concerning the adequacy of the alternative forum, however, the defendant must generally provide record evidence indicating that the plaintiff could obtain proper redress in the alternative forum. See id. at 449.

### a. The Defendants are Amenable to Process in St. Kitts

The defendants are amenable to process in St. Kitts. Ross is a corporation organized under the laws of the Federation of St. Kitts and Nevis and is subject to process in St. Kitts. (See Defs. Statement at ¶ 1; Defs. Br. at 15.) Although DeVry may not be amenable to process in St. Kitts from a procedural standpoint, DeVry expressly agrees to accept process for any action Archut may bring in St. Kitts. (See Defs. Br. at 15 n.3.) The defendants also agree to waive any potential statute of limitations defense on the condition that Archut commences an action in St. Kitts within a reasonable time after the Court dismisses the remaining claim. (See id. at 15.)

### b. Archut's Claims Appear Cognizable in St. Kitts

Archut's common law of breach of contract claim appears cognizable under St. Kitts law. Archut does not expressly dispute that St. Kitts can provide her with the appropriate redress. (See generally Archut Opp'n Br. at 19-20; Defs. Reply Br. at 1.) Archut premises her argument only on the fact that the defendants failed to meet their burden of establishing the adequacy of the proposed alternate forum. Unless there is a dispute among the parties regarding the adequacy of the foreign forum, however, the defendants are under no obligation to provide record evidence that

St. Kitts would provide Archut with an adequate remedy.  See
Miller, 380 F.Supp.2d at 450.

The defendants nonetheless provide record evidence that
Archut's claims are cognizable under St. Kitts law.  (See Defs. Br.
at 15.)  The defendants aver that St. Kitts bases its legal system
on the British common law system, and that St. Kitts's final court
of appeal is the Judicial Committee of the Privy Council in the
United Kingdom.  (See Defs. Supp. Statement at ¶ 133; dkt. entry
no. 47-4, Decl. of Howard Wexler, Ex. 5, Investment Climate
Statement at 2.)  They stress St. Kitts thus "recognizes claims for
breach of contract, and provides detailed mechanisms for enforcing
contracts in its courts."  (See Defs. Supp. Statement at ¶ 134;
Decl. of Howard Wexler, Ex. 6, Enforcing Contracts Statement at 1
(containing information collected by World Bank on efficiency of
contract enforcement in St. Kitts, particularly in "the evolution
of a sale of goods dispute").)  The defendants further aver that,
under certain circumstances, St. Kitts recognizes contract claims
brought by students against universities.  (See Defs. Br. at 15.)
See e.g., Panchal v. Med. Univ. of the Ams., Ltd., Claim No. NEVHCV
2003/0096 (E. Caribbean Sup. Ct., St. Kitts & Nevis, Nevis Cir.
Mar. 28, 2011) (finding that contractual relationship existed
between plaintiff-student and university she was enrolled in, that
Honor Code formed part of that contract, and that university was
liable for breach of contract).

Archut even acknowledges that the defendants offered such evidence. (See Archut Opp'n Br. at 19 (stating that defendants, to support their position, offer "several decisions from Caribbean and British courts generally recognizing a cause of action for breach of contract, and some non-authoritative references to legal remedies for breach of contract in St. Kitts").) Archut recounts the evidence proffered by the defendants not to dispute whether St. Kitts is an adequate alternative forum, but instead to demonstrate that the evidence is at odds with one of the defendants' summary judgment arguments contained later in the same brief. (See id.) In so arguing, Archut states:

> Defendants' position is also somewhat at odds with itself. On one hand, they devote much discussion in their brief to why St. Kitts would not afford plaintiff any realistic prospect of securing relief there. See Defendants' Brief at 24-25, under the subject heading "St. Kitts Law Does Not Recognize Archut's Contract Claim". Yet one of the decisions they cite appears to recognize a contract-type cause of action by a medical student who was terminated for disciplinary reasons without fundamental procedural fairness. Panchal v. Med. Univ. of the Americas, Ltd., Claim No. NEVHCV 2003/0096 (Eastern Caribbean Sup. Ct., St. Kitts & Nevis, Nevis Cir. Mar. 28, 2011).

(Id.)

Archut's argument is misplaced. Although the subject heading in the defendants' brief that Archut refers to -- "St. Kitts Law Does Not Recognize Archut's Contract Claim" -- ostensibly points to the theory that Archut's claim may not be cognizable in St. Kitts,

13

a close reading of the defendants' argument under that subject heading warrants a different conclusion.[4]  The defendants do not argue that such breach of contract claims are recognized by the United States but not by St. Kitts, rather, the defendants argue that Archut's breach of contract claim would eventually fail in either jurisdiction simply because no enforceable contract existed. (See Defs. Br. at 24-25 (asserting that because Ross Student Handbook confers Ross's Dean with final authority for interpreting and applying Ross policies and procedures, the Student Handbook cannot contractually require Ross to do anything); see also Defs. Reply Br. at 7, 9-10 (responding to Archut's claim -- that defendants admitted St. Kitts would not recognize her breach of contract claim -- by clarifying that their argument actually is that neither St. Kitts nor New Jersey would recognize Archut's claim because no enforceable contract existed).)  The defendants need not demonstrate that Archut could prevail on her breach of contract claim in the alternative forum in order to meet their burden; they must only demonstrate that the claim meets the basic

_____

    [4] The Court notes that the section titled "St. Kitts Law Does Not Recognize Archut's Contract Claim" is part of the defendants' argument for summary judgment and not part of their argument for dismissal pursuant to forum non conveniens.  (See Defs. Br. at 24-25.)

criteria of viability for being tried in St. Kitts.  They have so demonstrated.[5]

The defendants have met the threshold requirement of showing that an adequate alternative forum exists, namely St. Kitts.  The defendants are amenable to process in St. Kitts.  St. Kitts courts appear to provide appropriate redress for Archut's claims.  Moreover, Archut does not dispute whether St. Kitts is an adequate alternative forum; instead, Archut merely postulates that the defendants did not meet their burden on this factor.  This is sufficient for this Court to find that St. Kitts would be an adequate alternative forum.

### 2.   Archut's Choice of Forum is Due Some Deference

The adequacy of the alternative forum having been determined, the next question is the amount of deference to be given to Archut's choice of forum.  Ordinarily, a strong presumption of convenience exists in favor of a plaintiff's chosen forum, and this

---

[5] The Court notes that a remedy is not inadequate merely because it is less favorable to the plaintiff than the remedy available in the plaintiff's chosen forum.  See Piper Aircraft Co., 454 U.S. at 250 ("Except for the court below, every Federal Court of Appeals that has considered this question after Gilbert has held that dismissal on grounds of forum non conveniens may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery."); see also Fitzgerald v. Texaco, Inc., 521 F.2d 448, 453 (2d Cir. 1975) (holding that district court "has discretion to dismiss an action under the doctrine of forum non conveniens, . . . even though the law applicable in the alternative forum may be less favorable to the plaintiff's chance of recovery").

presumption may be overcome only when the balance of the public and private interests "clearly" favors an alternate forum.  Piper Aircraft Co., 454 U.S. at 255.  When the plaintiff is foreign, however, this assumption is much less reasonable.  Id. at 256. Because the central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.  Id.[6]

An American citizen's forum choice, however, should not be given dispositive weight.  See id. at 255 n.23.  Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has brought an action in the plaintiff's home forum.  Id.  As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.  Id.  In particular, if the

_____

[6] The defendants argue that Archut is a foreign plaintiff for forum non conveniens purposes because she is a North Carolina resident.  (Defs. Br. at 16.)  The defendants are incorrect.  A "foreign" plaintiff for forum non conveniens purposes refers to a citizen of a foreign country, not a resident of another state within the United States.  See Piper Aircraft Co., 454 U.S. at 255 n.23 (distinguishing between "foreign" and "American" plaintiffs in explaining why greater deference is due to forum choice of "citizens" and "residents"); see also LaSala v. UBS, AG, 510 F.Supp.2d 213, 223 (S.D.N.Y. 2007) ("In cases with foreign defendants, the home forum for the plaintiff is any federal district in the United States, not the particular district in which the plaintiff lives.").

operative facts giving rise to the complaint occurred outside of
the chosen forum, then deference owed to a plaintiff's choice of
forum is reduced.  Lynch v. Hilton Worldwide, Inc., No. 11-1362,
2011 WL 5240730, at *3 (D.N.J. Oct. 31, 2011) (dismissing complaint
filed by New Jersey plaintiffs in their home forum where pertinent
facts giving rise to action had little connection to New Jersey).
In Lynch, the district court determined how much deference to give
to the New Jersey plaintiffs' choice to bring an action in their
home forum when the facts giving rise to the complaint occurred in
London.  See id.  The district court stated:

> In this case, the Plaintiffs are New Jersey residents
> and have chosen to sue in their home forum. This choice
> is generally accorded great deference by the Court.
> However, New Jersey has little connection with the
> pertinent facts giving rise to this law suit.  The
> Plaintiffs' case centers on a slip and fall which
> happened in a London hotel, the allegedly unsafe
> condition of a London bathtub and the alleged negligence
> of the London hotel employees.  All of the facts giving
> rise to the Plaintiffs' complaint occurred in London.
>
> Therefore, while the Plaintiffs have sued in their home
> forum and this choice is given deference by the Court,
> this choice is not dispositive and the Court's deference
> is somewhat diminished since the operative facts giving
> rise to the action occurred outside of New Jersey.

Id.

The Court acknowledges that Archut's choice of forum is
entitled to some deference.  Archut is a North Carolina resident
and chose to file the Complaint in the United States.  Archut is

not a foreign plaintiff for _forum_ _non_ _conveniens_ purposes, so a
presumption of convenience initially exists in favor of her chosen
forum.  See _Piper Aircraft Co._, 454 U.S. at 255 n.23.  This Court,
however, declines to award full deference to Archut's choice of
forum, as nearly all of the facts giving rise to the Complaint
occurred in St. Kitts.  (See 11-19-12 Mem. Op. at 2-9.)  The Court
concludes that Archut's choice of forum is entitled to a somewhat
diminished level of deference.  See _Lynch_, 2011 WL 5240730, at *3
(holding that deference to plaintiffs' choice to bring action in
home forum is "somewhat diminished since the operative facts giving
rise to the action occurred outside of New Jersey").

### 3. The Balance of Private and Public Interest Factors

Although Archut's choice of forum is accorded some deference,
the defendants must still demonstrate that dismissal pursuant to
_forum_ _non_ _conveniens_ is warranted.  To determine whether dismissal
is warranted, the Court will consider the oppression and vexation
prong of the _forum_ _non_ _conveniens_ inquiry.  _Windt_, 529 F.3d at 192.
"When an alternative forum has jurisdiction to hear the case, and
when trial in the plaintiff's chosen forum would establish
oppressiveness and vexation to a defendant . . . out of all
proportion to plaintiff's convenience, . . . the district court
may, in the exercise of its sound discretion, dismiss the case."
_Id._  The Court, in exercising its discretion, "must balance the
relevant public and private interest factors and determine whether

18

the balance of these factors favors dismissal of the case." Id.

The task of balancing the private and public interest factors is essentially qualitative, not quantitative. See Lacey II, 932 F.2d at 180-82 (concluding that depending on case, some factors are "more equal" than others). A defendant must show that the balance of the public and private factors tips decidedly in favor of trial in the foreign forum. Id. at 180. The Court has considered the parties' arguments and has determined that, on balance, the defendants have established oppressiveness and vexation to them out of all proportion to Archut's convenience.

### a. The Balance of Public Interests

The Court first examines the relevant public interest factors. The relevant public interest factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty. Windt, 529 F.3d at 189. In evaluating the public interest factors, the district court must consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to the plaintiff's chosen forum. Lacey v. Cessna Aircraft Co., 862 F.2d 38, 48 (3d Cir. 1988) ("Lacey I").

### i.  The Administrative Difficulties Flowing from Court Congestion

Litigating this case in the chosen forum will increase court congestion and present unnecessary administrative difficulties due to the fact that the operative facts giving rise to the action occurred outside of New Jersey.  Neither Archut nor the defendants, however, proffer any arguments regarding this factor.  There is thus no basis on the record to consider comparative court congestion as a factor weighing in favor of either party.  See Lony II, 935 F.2d at 613.

### ii.  The Local Interest In Having Localized Controversies Decided at Home

Archut argues that New Jersey and the United States have a far more significant interest in this case than St. Kitts.  (See Archut Opp'n Br. at 6-16.)  Archut emphasizes that the public interests favor a United States forum because Ross's student body consists largely of United States students who are recruited in the United States, submit applications in the United States, are interviewed in the United States, finance their educations with federal student loan funds, and return to the United States after graduation.  (See id. at 20.)  Archut disputes the defendants' contention that New Jersey has no connection to her purported contractual relationship with Ross.  (See id. at 13.)  Archut specifies that it was Ross's New Jersey office where she submitted her application materials,

was interviewed, and first disclosed her learning disability and West Virginia University accommodations.  (See id. at 13-14.)

The defendants argue that "St. Kitts has a strong 'local interest' in resolving an alleged contractual dispute between a St. Kitts university and a student residing on St. Kitts, arising from testing accommodations requested on St. Kitts."  (Defs. Br. at 16-17.)  In arguing that "St. Kitts possesses a vastly more significant relationship with the contract than New Jersey," the defendants note that the purported contract was to be performed in St. Kitts, Ross's policies and procedures concerned its veterinary school, which is located in St. Kitts, Ross is a St. Kitts entity, and Archut resided in St. Kitts while she studied at Ross.  (See id. at 10-11.)  The defendants therefore reason that, while the United States has no national interest in asserting authority over a foreign contract claim, St. Kitts has "an extremely strong interest in adjudicating contractual disputes between a major St. Kitts university and a student studying on St. Kitts."  (See id. at 8.)

The defendants further argue that St. Kitts has a substantial need and interest in having its law apply to Ross's policies and procedures.  (See id. at 11-12.)  They state:

> Ross is accredited by the St. Kitts and Nevis
> Accreditation Board to offer a doctor of veterinary
> medicine program.  The Accreditation Board was
> established by the Government of St. Kitts and sets
> criteria and standards for all aspects of tertiary

education on St. Kitts, including but not limited to
such issues as educational resources.  To hold Ross to a
standard set pursuant to the contract law of New Jersey,
or any other U.S. state, would be to interfere with St.
Kitts' legitimate need and interest in governing,
through its Accreditation Board, all aspects of tertiary
education provided in St. Kitts.

Not only is Ross located in St. Kitts, and accredited by
its Accreditation Board, it also makes a substantial
contribution to the economy. . . .  Conversely, New
Jersey has neither a need nor an interest in
adjudicating how a St. Kitts university operates, or how
it interacts with non-New Jersey students.

(Id. (citations omitted).)  The defendants also underscore the fact

that "a St. Kitts court would be intimately more familiar with the

local conditions that made it prohibitively expensive for Ross to

offer a live reader."  (Defs. Reply Br. at 8.)

The Court is persuaded by the defendants' arguments.  The

local interest in having localized controversies decided at home

"(1) should be read jointly with that of avoiding burdening jurors

with cases that have no impact on their community, and (2) focuses

on the nature of the dispute and the effect that the outcome might

have on the community of the local jurors."  Windt v. Qwest

Commc'ns Int'l, Inc., 544 F.Supp.2d 409, 423 (D.N.J. 2008), aff'd,

529 F.3d 183 (3d Cir. 2008).  This case concerns the alleged breach

of a contractual relationship between a St. Kitts university and an

enrolled student residing in St. Kitts.  The student, Archut, is a

Virginia native who received a college education in West Virginia,

resided in St. Kitts while enrolled at Ross, and now resides in

North Carolina.  (See 11-19-12 Mem. Op. at 3.)  The university,
Ross, is a school that operates in St. Kitts and is a corporation
organized under the laws of the Federation of St. Kitts and Nevis.
(See id.)

That Archut mailed her application to an office in New Jersey
and interviewed at that office does not transform the case into a
localized controversy.  Archut argues that Ross's New Jersey office
was substantially involved in Ross's failure to provide her with
the necessary accommodations.  Yet, Archut's disclosure of her
learning disability and West Virginia University accommodations to
Ross's New Jersey office did not include any information about the
need for a live reader.  (See 11-19-12 Mem. Op. at 5-6.)  Archut
claims that, but for the misplacement of her disability
documentation from West Virginia University by Bill Bingham (an
employee of Ross's New Jersey office) in December 2007, the
discrepancy between that documentation and Archut's "clearly
explained need for a live reader would have been apparent at her
initial meeting with Elpida Artemiou (a Ross student counselor
responsible for handling accommodation requests) during the first
week of class in early January 2008."  (Archut Opp'n Br. at 14.)

The Court does not agree with Archut's assertion.  Whether
Bill Bingham misplaced the disability documentation has little
relevance.  The misplaced disability documentation "did not mention
a live reader and stated that Archut would be responsible for

sending the most recent documentation of her impairments and need for accommodations." (See 11-19-12 Mem. Op. at 5-6.) There is no reason to assume Archut would have acted on the purported omission, as Archut had several subsequent opportunities to provide the requisite written documentation regarding her disability and the nature of the accommodation sought and failed to do so until well into her first semester at Ross. (See, e.g., 11-19-12 Mem. Op. at 6 (stating that Archut filled out Personal Data Form during Ross student orientation and made no request for live reader in disabilities section of form); Defs. Statement at 57 ("Artemiou met with Archut sometime in early January. During this meeting, Archut requested additional time on examinations and, when possible, a room without distraction. Although Archut mentioned receiving a reader accommodation at West Virginia University, she did not request a reader during this meeting.").)

When Archut finally did provide written documentation to Ross, the documentation suggested only that she would benefit from a general audio accommodation; it did not specify the need for a live reader. (See 11-19-12 Mem. Op. at 7-8.) Moreover, Archut provided this written documentation several months into her first semester at Ross, long after she would have initially realized Ross was not providing her with a live reader pursuant to any alleged documentation sent from West Virginia University to Bill Bingham. (See id. at 7-8.)

As the local interest in having localized controversies
decided at home focuses on the effect that the resolution of the
case would have on the local community, New Jersey has little
interest in the resolution of this case. See Windt, 544 F.Supp.2d
at 423. The tangential relationship between the subject matter of
this action and the defendants' activities within the state of New
Jersey undercuts Archut's argument that New Jersey and its citizens
have an interest in hearing the case. The citizens of New Jersey
simply do not have an interest in a foreign university's failure to
accommodate a student's disability. St. Kitts in contrast has a
strong interest in the resolution of this case for all of the
reasons identified by the defendants. The Court thus finds that
St. Kitts's interest in having this localized controversy decided
at home strongly favors dismissal.

> ### iii. The Avoidance of Unnecessary Problems in Conflict of Laws, or in the Application of Foreign Law

The district court is not required to determine which law the
foreign court would apply. See Piper Aircraft Co., 454 U.S. at
251; Lacey II, 932 F.2d at 187 n.14. "The doctrine of forum non
conveniens . . . is designed in part to help courts avoid
conducting complex exercises in comparative law." Piper Aircraft
Co., 454 U.S. at 251. The district court, nevertheless, must
"consider the impact of choice-of-law problems on the forum,

particularly since the need to apply foreign law points toward dismissal." Lacey I, 862 F.2d at 48.

In making a choice-of-law determination in a breach of contract case, the forum that has the most significant relationship with the parties and the contract is paramount. Forestal Guarani S.A. v. Daros Int'l, Inc., 613 F.3d 395, 201 (3d Cir. 2010); see also Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F.Supp 324, 330 (D.N.J. 1995) ("In contract suits, New Jersey follows the Restatement (Second) of Conflict of Laws § 188 (1971), which applies the law of the jurisdiction having the most significant relation and closest contacts with the transaction and the parties."). The defendants conduct a thorough analysis using the factors set forth in Restatement (Second) of Conflicts of Laws §§ 6, 188 to determine which forum has the most significant relationship. (See Defs. Br. at 9-13.) In doing so, the defendants conclude that "St. Kitts possesses a vastly more significant relationship with the contract than New Jersey." (Id. at 10.) Although this Court need not rule conclusively on the issue of whether New Jersey or St. Kitts substantive law applies to this case, the defendants' analysis of the § 6 and § 188 factors, coupled with the Court's previous discussion of each forum's ties to the action, is enough to persuade the Court there is a strong likelihood that the law of St. Kitts should govern the dispute.

The uncertainty regarding the application of St. Kitts law is itself a factor that weighs in favor of dismissal. See <u>Miller</u>, 380 F.Supp.2d at 456. This Court, if retaining jurisdiction, will be burdened by the necessity of undertaking a time-consuming choice-of-law analysis to determine the propriety of applying St. Kitts law. See <u>id.</u> If St. Kitts law applied, the Court would then be burdened with examining and applying the law of St. Kitts. As "[t]he doctrine of <u>forum</u> <u>non</u> <u>conveniens</u> is designed in part to help courts avoid conducting complex exercises in comparative law. . . . the public interest factors point towards dismissal where the court would be required to untangle problems in conflict of laws, and in law foreign to itself." See <u>Piper Aircraft Co.</u>, 454 U.S. at 251. In the interests of having the action resolved in the forum which bears the most significant relationship to it, and avoiding unnecessary problems in conflict of laws and the application of foreign laws, the Court thus finds that this factor weighs strongly in favor of dismissal.

> **iv.  The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty**

The interest of settling disputes locally and not burdening jurors with cases that have no impact on their community focuses on the effect that the resolution of the case would have on the local community, its citizenry, and other localized considerations. <u>Windt</u>, 544 F.Supp.2d at 423. The burden of jury

duty should be placed on those having the closest ties to the action.  Mediterranean Golf, Inc. v. Hirsh, 783 F.Supp. 835, 840 (D.N.J. 1991).  The Court, as discussed supra, finds that St. Kitts has the closest ties to this action.  As New Jersey jurors would be improperly burdened by the need to resolve a matter having no impact on their community, the unfairness of burdening citizens in an unrelated forum with jury duty weighs strongly in favor of dismissal.

As (1) the local New Jersey community has virtually no interest in the dispute, while St. Kitts has a great interest in it, (2) the Court can avoid unnecessary problems in conflict of laws and the application of foreign laws if the remaining claim is dismissed, and (3) local jurors would be improperly burdened by the need to resolve a matter having no impact on their community, the Court concludes that the balance of public interests tips decidedly in favor of trial in St. Kitts.

### b.    The Balance of Private Interests

The Court next examines the relevant private interest factors. The relevant private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations that make trial of a case easy, expeditious, and inexpensive.  Windt, 529 F.3d at 189.

### i. Relative Ease of Access to Sources of Proof

The Court, in examining the relative ease of access to sources of proof, including, _inter alia_, the availability of witnesses and documentary evidence, "must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action." See _Lacey I_, 862 F.2d at 46. "Implicit in the phraseology [of the term relative ease of access to sources of proof] is that the plaintiff could, if necessary, gain access to essential sources of proof in _either_ forum." _Lacey II_, 932 F.2d at 186. A district court must therefore "be attuned to potential barriers to access to sources of proof." See _Mediterranean Golf, Inc._, 783 F.Supp at 846.

Archut notes that the location of relevant documents and other evidence poses no problem, "as all of the relevant documentation already has been included in the summary judgment record, or is otherwise obtainable in the U.S. or through electronic means." (See Archut Opp'n Br. at 22.) The Court acknowledges that the availability of documentary evidence, particularly in light of modern technological advancements, is at equipoise. See, e.g., _Joint Stock Soc. v. Heublein, Inc._, 936 F.Supp 177, 190 (D. Del. 2008) ("[T]he state of technology greatly reduces the burden placed

on parties with respect to the storage, production, transfer, and exchange of information.").

The parties' primary dispute regarding the sources of proof is the identities of the relevant witnesses. The defendants contend that the "key witnesses, including Dr. St. Jean [(Ross Associate Dean for Academic Affairs)], still reside in St. Kitts while others reside on neighboring islands. . . . Conversely, no one lives in New Jersey -- not even Archut." (See Defs. Br. at 17.)

Archut asserts that much of the relevant evidence focuses on the misplacement of her disability documentation by Ross's New Jersey office in December 2007. (See Archut Opp'n Br. at 14, 21-22.)[7] To this end, Archut argues that relevant sources of proof include individuals who may testify about the alleged breach of contract, including herself, her father, Bill Bingham, and various witnesses from West Virginia University. (See id. at 21-22.) Archut, in arguing against dismissal pursuant to forum non conveniens, stresses the location of these witnesses, noting that she and her father reside in Virginia, her expert witness, Dr. Jane Jarrow, is located in Ohio, Bill Bingham works in New Jersey, Dr. Norman Sean Fox (former Ross Associate Dean for Student Life) recently moved from St. Kitts to Wyoming, and "[Jane] Sanquist [(Ross Assistant Dean for Academic Administration)] is also leaving

---

[7] For a discussion of Archut's reasoning as to why much of the relevant evidence focuses on the misplacement of her disability documentation, see supra pp. 23-24.

Ross in a few months" for Oregon.  (See id.)  Archut concedes that

Elpida Artemiou and Dr. St. Jean remain employed by Ross and reside

in St. Kitts.  (See id. at 22.)

As noted above, the Court is entitled to determine whether the

evidence offered by the parties is critical, or even relevant to

prove or defend the claims.  Lacey I, 862 F.2d at 46.  Although

Bill Bingham purportedly still works in New Jersey, the Court finds

that his relationship with the contract is, at best, tangential.[8]

The Court thus agrees with the defendants that key witnesses still

live in St. Kitts, while none reside in New Jersey.

The Court therefore finds that, while the availability of

documentary evidence is at equipoise, the ease of access to

witnesses weighs strongly in favor of dismissal.

### ii.  The Availability of a Compulsory Process for Attendance of Unwilling Witnesses

The next step in the balance of private interests inquiry is

to examine the availability of a compulsory process for attendance

of unwilling witnesses.  Windt, 529 F.3d at 189.  Neither party,

however, considers the subpoena power of either forum's courts.

There is thus no basis in the record to consider the availability

of a compulsory process for attendance of unwilling witnesses as a

---

[8] For the Court's reasoning as to why Bill Bingham's
relationship with the contract is, at best, tangential, see
supra pp. 23-25.

factor weighing in favor of either party.  See <u>Lony II</u>, 935 F.2d at 613.[9]

### iii. The Cost of Obtaining Attendance of Willing Witnesses

The cost associated with obtaining the attendance of willing witnesses weighs in favor of dismissal, because a majority of the essential witnesses apparently reside either in St. Kitts or on neighboring islands.  (<u>See</u> Defs. Br. at 17 (stating that "key witnesses . . . still reside in St. Kitts, while others reside on neighboring islands"); Defs. Statement at 2 ("[A]ll the people who make decisions about whether to afford reasonable accommodations live and work on St. Kitts."); dkt entry no. 32-19, Pl. Answer to Interrog. at 1-12 (illustrating that several individuals who have knowledge of facts relating to allegations in Complaint reside in St. Kitts).)  While two critical witnesses, Elpida Artemiou and Dr. St. Jean, live in St. Kitts, only one potential witness, Bill Bingham, who has an attenuated connection to this action, lives in New Jersey.  (<u>See</u> Defs. Br. at 1; <u>accord</u> Archut Opp'n Br. at 21-22.)  As stated <u>supra</u>, Archut concedes that these two essential witnesses reside in St. Kitts.  (<u>See</u> Archut Opp'n Br. at 21-22.)

_____

[9] The Court notes that it lacks subpoena power over the majority of the witnesses in this case, as most witnesses live in St. Kitts, its neighboring islands, or in distant regions of the United States.  <u>See</u> Fed.R.Civ.P. 45(b) (federal court's subpoena power is limited to service within 100 miles of place specified for trial).  Although the parties mention that St. Kitts law is based on English common law, the Court declines to take judicial notice of St. Kitts courts' subpoena powers.

Archut also lists two witnesses located in Oregon and Wyoming. (See id. at 22.)  The Court recognizes that such witnesses may incur certain costs if traveling from their state of residency to either New Jersey or St. Kitts.  Because neither party has introduced evidence discussing such costs, however, the Court will not assume that a difference in such costs exists.

As for the witnesses residing in St. Kitts and its neighboring islands, the Court finds that it will be easier and more inexpensive for them to attend trial in St. Kitts.  The cost of obtaining attendance of willing witnesses therefore weighs strongly in favor of dismissal.

### iv. Practical Considerations that Make Trial of a Case Easy, Expeditious, and Inexpensive

The Court finds that practical considerations that make trial of a case easy, expeditious, and inexpensive favor a St. Kitts forum.  Archut argues that the location of the witnesses does not support the defendants' position because only two witnesses live in St. Kitts.  (See id. at 21-22.)  The defendants argue in contrast, as discussed supra, that the key witnesses still reside in St. Kitts and on neighboring islands, so "it will be easier and cheaper for them to attend trial in St. Kitts."  (Defs. Br. at 17.)  The cost of litigating in a distant forum necessarily creates financial difficulty for each party.  While St. Kitts may not be easy or inexpensive for Archut, she would also be burdened financially by a

trial in New Jersey, as she does not reside in New Jersey.  St.
Kitts alternatively would be much more convenient and inexpensive
for the defendants and the majority of the witnesses involved in
the case.  (See Defs. Br. at 17-18.)

Archut relies heavily on the notion that, because Ross has an
office in New Jersey, it would not be inconvenient for it to defend
this case in New Jersey.  (See Archut Opp'n Br. at 21.)  In support
of her argument, Archut cites a case from the District of New
Jersey, Dean-Hines v. Ross University School of Veterinary
Medicine, No. 05-3486 (Aug. 10 2006) (dkt. entry no. 30).  The
Court notes that the facts of this case, the claims at issue, and
the proof offered by the defendants distinguish this case from
Dean-Hines.  For instance, the Dean-Hines court found that the
movants failed to meet their burden of showing that St. Kitts would
be an adequate alternative forum in part because the movants did
not show that St. Kitts had statutes similar to the federal
statutes under which the plaintiff brought her claims.  See Dean-
Hines, No. 05-3486, at *11.  The Court here has determined that the
defendants met their burden in this respect.[10]  Moreover, in
balancing the public and private interests, the Dean-Hines court
relied on an "allegation that Ross's headquarters are located in
Edison, New Jersey."  See id.  This Court, however, has found that

_____

[10] For a discussion of whether St. Kitts is an adequate
alternative forum, see supra pp. 9-18.

Ross operates on St. Kitts and merely receives "some administrative support" from the New Jersey office. (See 11-19-12 Mem. Op. at 3.) For all the reasons stated supra regarding the respective connections each forum has with the subject matter of this action, the Court finds that it would be inconvenient for Ross to defend this case in New Jersey.

Other factual considerations also guide the Court's analysis. A plain reading of the parties' papers makes it apparent that the crux of the alleged wrongdoings -- that is, the defendants' alleged breach of contract -- occurred in St. Kitts. Because of this, as discussed supra, the Court is persuaded that there is a strong likelihood that the law of St. Kitts governs the dispute. As the law of St. Kitts likely governs the dispute, trial of the case in a St. Kitts forum will be much easier and expeditious.

The Court finds that: (1) the availability of documentary evidence is at equipoise, and the ease of access to witnesses weighs strongly in favor of dismissal; (2) it cannot weigh availability of a compulsory process factor in favor of either party; (3) the cost of obtaining attendance of willing witnesses weighs strongly in favor of dismissal; and (4) the practical considerations that make trial of a case easy, expeditious, and inexpensive favor a St. Kitts forum. Although the private interest factors are not as one-sided as the public interest factors, the

Court finds that a quantitative assessment of the private interest factors nevertheless tips decidedly in favor of dismissal.

### c.    The Balancing of Factors

The Court finds that the relevant public and private interest factors tip decidedly in favor of dismissal on the basis of <u>forum non conveniens</u>.  The balance of interests favors the defendants to such an extent that it overcomes this Court's deference to Archut's choice of forum.  As retention of jurisdiction would "result in oppression [and] vexation to the defendant[s] out of all proportion to [Archut's] convenience," the Court will dismiss the remaining claim pursuant to <u>forum non conveniens</u>.  <u>See</u> <u>Windt</u>, 529 F.3d at 190.

## III. CONCLUSION

For the foregoing reasons, the defendants' motion, insofar as it seeks dismissal of the remaining claim on the grounds of <u>forum non conveniens</u>, will be granted.  To prevent any prejudice to Archut, the Court will condition dismissal on certain waivers by the defendants.  Dismissal will be conditioned on: (1) the defendants' waiver of any statute of limitations defenses that they might otherwise have in St. Kitts, should Archut bring this action in St. Kitts within 90 days of the date of entry of the order and judgment; and (2) the defendants' stipulation to submit to personal jurisdiction in St. Kitts, should Archut bring this action in St.

Kitts within 90 days of the date of entry of the order and

judgment.  The Court will issue an appropriate order and judgment.


                                                                              s/ Mary L. Cooper
                                        **MARY L. COOPER**
                                        United States District Judge


Dated: October 30, 2013